**UNITED STATES of America**

v.

**Willie WILSON and Morris Griffin.**

**Cr. 10990–N.**

United States District Court
M. D. Alabama, N. D.
Jan. 2, 1958.

Hartwell Davis, U. S. Atty., and Robert E. Varner, Asst. U. S. Atty., Montgomery, Ala., for plaintiff.

L. H. Walden, Montgomery, Ala., and John Walters, Troy, Ala., for defendants.

JOHNSON, District Judge.

This cause is now before the Court upon the motion, as amended, filed separately and severally by the above-named defendants; said motion seeks to have this Court set aside the jury verdicts of guilty rendered November 20, 1957, as to each of these defendants and seeks to have the Court grant to them a new trial.

Several grounds are set up in the motion. For convenience, they may be grouped as follows:

(1) That the Court committed error in overruling the motion of the defendants to suppress the evidence on the ground that the evidence was obtained by reason of illegal search on the part of the government's agents without probable cause and without a search warrant.

(2) That the Court committed error in overruling defendants' motion for continuance made and filed following the Court's declaration of a mistrial. The overruling of this motion for continuance required the defendants to go to trial again on the same date.

(3) Defendants claim the jury venire was void because the names placed in the jury box by the jury commissioners were not selected by said commissioners.

(4) Defendants claim their constitutional rights were violated in that the Congress of the United States had no authority to prescribe qualifications of Federal jurors when such do not require the jurors to be qualified according to the law of the State of Alabama.

These grounds will be discussed in the order listed. However, prior to any detailed discussion, it is considered essential to set out the history of the case. These defendants were jointly indicted on September 11, 1957, by a grand jury convening in this district. Said indictment charged these defendants with violating certain sections of the Internal Revenue Code of the United States. The sections alleged to have been violated were: 5632 (concealing and aiding in the concealment of nontax-paid whiskey), 5008(b) (possession of 75 gallons of nontax-paid whiskey), and 7206(4) (the removal, deposit and concealment of 75 gallons of nontax-paid whiskey). To this indictment the defendants, separately and severally, entered pleas of not guilty. The case was called for trial on the morning of November 20, 1957, the government being represented by the United States attorney for this district and his assistants, and the defendants being represented by two attorneys of their choice. Upon inquiry and after the jurors were qualified generally, both the government and the defendants, through their respective counsel, announced ready for trial. A jury was selected after being qualified specifically for this case. The testimony was taken and the case proceeded to the point of argument by the counsel to the jury. It appeared on the trial of this case that the theory of the defense for the defendant Griffin was one of mistaken identity. Neither of these defendants testified; during the course of the argument by the United States attorney, reference was made by him to the fact that the defendant Griffin had not denied he was present at the time and place the officers had testified. This Court, upon proper motion, thereupon declared a mistrial at approximately 11:15 a. m. Since the case had only taken approximately two hours to try, the Court reset the case for trial at 1:30 p. m. on the same date. These defendants objected to being put

to trial again during the same term and filed a written motion for continuance; this motion was denied and another jury was qualified and selected at 1:30 p. m. on the same date. The questions and comments concerning the qualification and selection of the jury for this second trial are set out verbatim in Appendix "A" to this memorandum opinion.

## I. Defendants' Motion to Suppress the Evidence.

On November 13, 1957, these defendants, separately and severally, filed a written motion with this Court, seeking to have the Court enter an order suppressing the evidence obtained by the agents of the government upon the ground that said evidence was obtained by reason of an illegal search without probable cause and without a search warrant. To this motion of the defendants, the United States filed a motion asking the Court to quash the defendants' motion to suppress this evidence. This motion to quash was based upon the fact that the defendants' motion was uncertain and vague, that it failed to state that the defendants claimed possession of the illegal whiskey seized by the agents, and that it failed to state that the seizure of the whiskey was from their premises. On November 15, 1957, which was several days prior to the trial before the jury on the merits of the case, this Court conducted a hearing in open court in order to determine the legality of the evidence the government's agents obtained. After hearing the evidence, this Court determined that the motion to suppress was not well taken and on November 18, 1957, filed a written memorandum opinion, D.C., 159 F.Supp. 149. The pertinent parts of that opinion are as follows:

"In order to be more than fair to these defendants and in order to eliminate the necessity of an amendment, this Court overruled and denied the motion to quash filed upon behalf of the United States of America; this action overruling the motion to quash was taken in the face of the case of Scoggins v. United States, 92 U.S.App.D.C. 29, 202 F. 2d 211, and the case of the United States v. White, 7 Cir., 228 F.2d 832.

"All the evidence in support of defendants' motion to suppress was enacted by virtue of stipulation entered into by the parties. The pertinent portions of this stipulated evidence show that two agents for the Alcohol & Tobacco Tax Unit of the Treasury Department were, on August 26, 1957, at about 9:50 a. m., traveling south on U. S. Highway 331 at a point about 1½ miles south of Sprague, Alabama, in this district, at which time they saw a 1951 Ford approaching them, which Ford automobile appeared to them to be heavily loaded, with the rear end of the car extremely low. One of these defendants, Morris Griffin, was recognized as being in the front seat of the car. Griffin was known to these agents as being a Negro male that had a record and reputation for being in the nontax-paid whiskey business.

"The law is well settled that where there exists probable cause to believe that a felony is being committed in the presence of officers, no warrant is needed to stop and search the automobile. See Carroll v. U. S., 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543. The United States Circuit Court of Appeals for the Fifth Circuit has followed the law in the Carroll case in several cases, three of which are Koenann v. U. S., 230 F.2d 662; Medina v. U. S., 5 Cir., 158 F.2d 955; and Cannon v. U. S., 5 Cir., 158 F.2d 952, 953. This Court concludes from the circumstances in this case that the officers had reasonable cause for believing that these defendants were committing a felony in their presence and were justified in stopping and searching and seizing and arresting."

This Court is still of the opinion—and for the same reasons—that defendants' motion to suppress is not well taken.

II. The Claim of the Defendants That They Were Prejudiced by Being Put to Trial Again Immediately Following the First Trial, Which Ended in a Mistrial.

■ It should be noted that the reason the Court declared a mistrial in the first case was not because of any misconduct on the part of the defendants or their counsel, but because of an inadvertent statement made by the United States attorney in his closing argument to the jury. There is some question, that need not be discussed at this time, that the statement made by the United States attorney in his closing argument was prejudicial to such an extent that it was necessary for the Court to declare a mistrial. However, since the case had only taken a short while to try, this Court felt and still feels that the proper course in order to fully protect the rights of these defendants was to declare a mistrial, and that action was taken. There is no suggestion that the "atmosphere" which prevailed during any of the proceedings was prejudicial to the defendants. The record relating to the qualification of the jury for the second trial, which is set out in Appendix "A" of this memorandum opinion, reflects that all the jurors who sat on the first case were disqualified by the Court and that all the jurors who had heard any of the testimony or argument, or who had heard the testimony or arguments discussed, were declared by the Court to be disqualified insofar as the second case was concerned. In other words, the parties were, after an extensive *voir dire* examination by the Court, tendered a venire of jurors that had not had anything to do with the first case, that had heard none of the evidence in the first case, and that had not heard any discussion concerning the evidence or the arguments in the first case. The most that the defendants can complain of, insofar as the qualifications of the jurors for the second case are concerned, is that several of them had heard that the Court had declared a mistrial in the first case because of some statement the United States attorney made in his closing argument. None of the members of the jury venire tendered for the second case indicated that they had heard what the statement was. The defendants have completely failed to show this Court how this knowledge on the part of these jurors could have possibly prejudiced them. This Court has studied the record and cannot, on its own, find any possibility of prejudice to either of these defendants by the fact that some of the jurors had heard that the first case ended in a mistrial. There is no question but that the matter rested in the sound discretion of the trial court.

In the case of Harris v. United States, 6 Cir., 1926, 10 F.2d 358, 359, the court stated:

"It is claimed by the plaintiff in error that the court in ordering an immediate retrial of this cause over his objection denied to him the benefits of the provision of the Sixth Amendment to the Constitution of the United States, which guarantees to every person accused of crime a speedy public trial by an impartial jury.

"The plaintiff in error was represented by counsel, confronted by the witnesses, fully informed of the nature and cause of the accusation against him, and was tried by an impartial jury. Nor does it appear from the record that he offered any reason whatever for the continuance of this case until the next term of the court."

In the case of Neal v. United States, 4 Cir., 1927, 22 F.2d 52, 53, Judge Parker gives a good discussion of this point.

The circuit court held that whether the second trial should be held immediately or be continued was within the sound discretion of the trial court. The circuit court held that the trial judge was in error in not questioning the jurors more closely. The court stated:

"In selecting the jury for this second trial, exceptions were taken

to the refusal of the trial judge to ask certain questions of the prospective jurors on their voir dire, and these exceptions present the principal question before us."

Even though the court reversed the trial court, the opinion makes it clear that in the absence of an abuse of discretion, the decision as to whether or not a continuance will be granted rests within the sound discretion of the trial judge. The court stated:

"The motion for continuance was a matter addressed to the sound discretion of the trial judge, and his action thereon is not subject to review, in the absence of clear evidence of abuse. [cases cited]. And it cannot be said that the refusal of a continuance is an abuse of discretion merely because there has been a mistrial of the case at the same term of court. Although the fact that the case has been once tried at the term, and that jurors not engaged in the trial have probably heard parts of the evidence and arguments and discussions of the case by parties and witnesses in and about the courtroom, is a strong ground for continuance, it is for the trial judge, who has been present and can understand the atmosphere of the trial better than we possibly can in the appellate court, to determine whether under all the circumstances it is fairer to both sides to try the case again at the same term or to continue it.

"But, where, after a mistrial, the defendant, as in this case, is put on trial again at the same term, we think that the trial judge should be very careful to see that the jury obtained is fair and impartial. Jurors who have heard a part of the evidence in a former trial, who have listened to the arguments of counsel, and who perchance have heard discussions of the case in the corridors of the court building by witnesses or bystanders, are very likely to have formed fixed opinions about the case, or some of the material issues involved in it, and, if chosen, to enter upon their duties with an attitude very different from that which the law contemplates as the attitude of an unbiased juror. And although ordinarily the question as to whether a juror is fair and impartial is a matter addressed to the discretion of the trial judge, we think that the judge is bound either to make or to permit such inquiries to be made as will enable him in the exercise of his discretion to exclude from the jury persons who have formed fixed opinions about the case and are not fair and impartial jurors within the contemplation of the law. This is true in all cases, but it is particularly important where there is a second trial at the same term and at least a part of the jurors called have heard the evidence and have been subjected to the atmosphere of the former trial.

"In this case we think that the learned District Judge erred in not making further inquiry of the jurors, for the purpose of ascertaining whether any of them had formed fixed opinions as to the guilt or innocence of the defendant. The fact that they denied that they had 'both formed and expressed' opinions was not sufficient. The real inquiry was whether the jurors were unbiased and impartial; that is to say, whether they had or had not formed such fixed opinions as to the guilt of the accused that they would not be 'indifferent as they stood unsworn,' and, although the expression of opinion was a pertinent matter of inquiry, it was important only as showing that the opinion had been formed. If any of the jurors had formed such a positive and decided opinion as to the merits of the case, that he was not an impartial juror, he was incompetent whether he had expressed that opinion or not. [cases cited]."

This Court concludes that it did not abuse its discretion in requiring these defendants to go to trial on the same date that the mistrial was declared. This Court concludes that neither of these defendants was prejudiced by going to trial again on the same date and that this Court was more than careful to see that a fair and impartial jury was available and obtainable by the parties in the second trial. Therefore, in the absence of any indication that this Court abused its discretion and in the absence of any indication that the jury for the second trial was not fair and impartial, this Court concludes that there is no merit in the claim by these defendants that error resulted in their being put to trial the second time immediately following the first trial, which had ended in a mistrial.

### III.   Claim That Jury Venire Was Void.

In this third claim, the defendants state in their motion that the venire was void due to certain directives which were issued to the jury commissioners by the United States Department of Justice. Upon a hearing that the Court conducted, at which time the defendants were offered an opportunity to prove the grounds in their motion or present some evidence in support of these grounds, it was stated by counsel representing defendants that the only evidence they had in support of this ground was an article or articles which appeared in one of the local newspapers. These articles were to the effect that the United States Department of Justice had issued such a directive. However, both the jury commissioners testified that they knew of no such directive and that no such directive had ever been called to their attention. As a matter of fact, the defendants offered no proof in support of this claim. They did, however, offer in evidence a directive from the Administrative Office of the United States Courts dated September 16, 1957. This directive is styled "Bulletin No. 488" and is set out verbatim in Appendix "B" to this memorandum opinion. They also offered a copy of a letter from this Court to each of the jury commissioners, said letter being dated September 19, 1957; a copy of this letter is being set out verbatim in Appendix "C" of this memorandum opinion.

It appears that the defendants are claiming that the directive from the Administrative Office of the United States Courts and the letter of September 19, 1957, from this Court to the jury commissioners violated the rights of these defendants in that the jurors "selected" by the jury commissioners, after receiving this letter and this directive, were not the personal selection of the jury commissioners. The defendants rely on the case of United States v. Murphy, D.C. 1915, 224 F. 554, to sustain this position. A study of the Murphy case shows that it relates to the "selection" of names that went into the jury box. In the Murphy case, the evidence showed that an assistant United States attorney had personally selected for one of the jury commissioners many names that the jury commissioner put in the jury box; that the assistant United States attorney had also, in deciding upon the names he selected, excluded approximately 2,000 prospective jurors. In the Murphy case, the court held that no person or official, other than a jury commissioner, has the right or the authority to participate in the "selection" of the name of any juror to go in the jury box. Assuming that the Murphy case sets out the law, it is quite obvious that that case is not applicable to this case. It will readily appear from a reading of the directive from the Administrative Office and the letter from this Court that the "selection" of names was left entirely and completely to the jury commissioners. As a matter of fact, the directive from the Administrative Office only called to the jury commissioners' attention that part of the Civil Rights Act of 1957, Public Law 85–315, 28 U.S.C. § 1861, approved September 9, 1957, relating to the qualifications of Federal jurors. It called this to the attention of the jury commissioners only by quoting that portion of the Act; nothing was said in the bulletin that attempted to in-

terpret or comment upon that portion of the Act of Congress. The most the defendants can make of either of these documents is that this Court in its letter, after calling to the attention of the jury commissioners the new law as it pertains to the qualifications of Federal jurors, stated:

> "You will notice that an individual, in order to be qualified as a federal juror, now does not have to meet the qualifications prescribed by the laws of the State of Alabama. This means that the names of qualified female citizens may be and should be placed in the jury box for this district.

> "I know from my previous discussions with you concerning the qualifications of jurors in this district that you have not, at any time, discriminated because of any citizen's race or color. However, it may be that you did pass over some citizens that may not have been then qualified according to the laws of the State of Alabama but now are qualified. If that is the case, you should, at the earliest possible time, review those instances.

> "I want you to know that since you and Mr. Dobson refilled this jury box, the jurors whose names have been drawn therefrom are of the highest caliber, and this reflects the time and effort that you spent in selecting these individuals. I appreciate very much your serving as a Jury Commissioner in this district."

■■ As a matter of fact, each of the jury commissioners testified on the hearing that the only significance they placed upon either the bulletin from the Administrative Office or the letter from the Court was that Federal jurors no longer had to meet the requirements for jurors set up by the Legislature of the State of Alabama. In short, the defendants' evidence in support of this phase of their motion does not even come close to the prohibition set up in the Murphy case. There is no merit in this phase of the defendants' motion.

This brings us to the last ground which attacks the constitutionality of the "Jury Qualification" portion of the Act of Congress commonly referred to as the Civil Rights Act of 1957, Public Law 85–315.

IV. The Contention of the Defendants That the Sixth Amendment to the Constitution of the United States Requires the Jury to be Qualified According to the Law of the State of Alabama.

This part of the defendants' motion specifically says the "venire from which the jury was selected in this case was chosen and selected contrary to the 6th Amendment of the United States Constitution, in this: The 6th Amendment provides ' * * * jury of the State and District * * *' and defendants allege * * * this means that it must be a jury with the qualifications prescribed by the State law * * *."

There is no question but that the jury venire presented to the parties in this case contained the names of several female jurors. As a matter of fact, this term of court in this district was the first time any female has ever served as a juror in either the State or Federal courts sitting in Alabama.

After receiving notice of the passage of Public Law 85–315, which amended § 1861 of Title 28 of the United States Code, the two jury commissioners for the district placed the names of certain qualified female citizens in the jury box for this district; some of these names were drawn for this particular term.

There is no question but that the law of the State of Alabama only provides that "male citizens" are eligible for jury duty. See § 21 of Title 30 of the 1940 Code of Alabama. There is also no question but that prior to the passage of Public Law 85–315, which amended § 1861 of Title 28 of the United States Code, any jurors who served in the Federal courts must have been not "incompetent to serve as a grand or petit

juror by the law of the State in which the district court is held." See Wuichet v. U. S., 6 Cir., 1925, 8 F.2d 561, certiorari denied 270 U.S. 651, 46 S.Ct. 351, 70 L.Ed. 781; United States v. Ballard, D.C. 1940, 35 F.Supp. 105; United States v. Roemig, D.C.1943, 52 F.Supp. 857.

Thus, we reach the question raised by this part of defendants' motion: Does the Congress of the United States have the authority to set up the qualifications of jurors who are to serve in the Federal courts without regard to the qualifications set up by the States wherein the Federal courts sit, and, if so, does that part of Public Law 85–315 relating to the qualifications of Federal jurors violate the rights of these defendants as guaranteed by the Sixth Amendment to the Constitution of the United States?[1]

■ For these defendants to prevail under their Sixth Amendment theory, the words in that Amendment, "by an impartial jury of the State and district wherein the crime shall have been committed * * *" must be construed to mean an impartial jury *qualified* under both the Federal law and the laws of the State wherein the crime was committed. In other words, the defendants say the jury cannot be " * * * of the State and district * * *" unless the jurors are *qualified according to the laws of the State* wherein the District Court sits. Such a contention cannot be correct. It is the opinion of this Court and it is now held that the words, "of the State and district" only mean from the geographic area of the State and district wherein the crime shall have been committed and "wherein the District Court sits." The use of the words "and district" confirms such a conclusion because the "district" has no legislative body to set up any laws relating to jury qualifications or anything else. Therefore, it follows that the meaning the defendants would have this Court attach to that part of the Sixth Amendment of the Constitu-

tion of the United States is an impossible one.

The only point left insofar as this phase of the defendants' motion is concerned is whether or not the Congress of the United States has the authority to set up qualifications for Federal jurors without regard to the qualifications set up by the State wherein the District Court sits. This Court is assuming, of course (and there can be no doubt about it), that the words as used in Public Law 85–315, "Any citizen of the United States * * *" includes a female citizen of the United States.

In the case of Brickey v. U. S., 8 Cir., 1941, 123 F.2d 341, 346, the court stated:

"By the 6th Amendment of the Constitution the appellant was entitled to a trial by an impartial jury. The contention that Diggs was not a qualified juror because he had sat upon a jury at a trial in the state court within one year is without merit. The qualification of jurors in the federal court upon this ground is controlled by federal law. Section 286 of the Judicial Code, 28 U.S.C.A. § 423, provides that 'No person shall serve as a petit juror in any district court more than one term in a year; and it shall be sufficient cause of challenge to any juror called to be sworn in any cause that he has been summoned and attended said court as a juror at any term of said court held within one year prior to the time of such challenge.' "

From this case, it appears that Congress does have the authority to set up qualifications for Federal jurors without regard to State qualifications.

■ This Court, therefore, concludes that the Congress of the United States does have the authority to set up the qualifications for Federal jurors without regard to any qualifications that may be set up by the legislative bodies

1. These defendants do not claim any bias, prejudice, partiality, or disqualification on the part of any of the jurors on the venire except that the females were disqualified according to the law of the State of Alabama.

of the various States wherein the District Courts sit. This Court also concludes that that part of Public Law 85–315 relating to "Qualifications of Federal jurors" is constitutional and not violative of the rights of these defendants under the Sixth Amendment of the Constitution of the United States.

■ Aside from any constitutional question, this particular part of defendants' motion must fail because these defendants were certainly aware of the statute of the State of Alabama (Title 30, § 21, 1940 Code of Alabama), which made only "male citizens" qualified for jury duty in the State of Alabama, and they were likewise certainly aware of the fact that there were women on the jury venire.[2] The record discloses that neither of these defendants prior to going to trial at either time raised any objection concerning the qualifications of any member on the jury venire. It is the opinion and conclusion of this Court that this conduct on the part of these defendants constituted a waiver of any objection they may have had to the qualification of these female jurors. This includes the objection they are now making that these female jurors were not qualified according to the laws of the State of Alabama and therefore were not qualified according to the Federal law. See the case of Ford v. U. S., 5 Cir., 1953, 201 F.2d 300, 301, wherein the Court stated:

"While previous conviction of a felony does not render the convicted person fundamentally incompetent to sit as a juror, it is a ground of challenge for cause, which the defendant may insist upon or waive, as he elects. If not seasonably exercised, the objection is waived. It is the right and duty of a defendant to discover on *voir dire* examination, or from other sources, whether a talesman is subject to disqualification for cause. Where the objection to a juror relates, not to actual prejudice or other fundamental incompetence, but to a statutory disqualification only, such disqualification is ordinarily waived by failure to assert it until after verdict, even though the facts which constitute the disqualification were not previously known to the defendants. The objection based upon the previous felony convictions comes too late after verdict, no actual bias or prejudice being shown. [Cases cited.] "

See also the case of Hanratty v. U. S., 5 Cir., 1955, 218 F.2d 358, certiorari denied 349 U.S. 928, 75 S.Ct. 770, 99 L.Ed. 1259, which dealt with "excluding" women from jury duty.

For the foregoing reasons, the motion of these defendants, seeking to have this Court set aside the jury verdicts of November 20, 1957, finding them guilty as charged in the indictment in this cause, must fail. An order will be entered accordingly.

### Appendix "A"

"(The above styled case coming on to be heard at 1:30 p. m., November 20, 1957, the following occurred)

"The Court: Now, Mr. Clerk, which jury do you have in the box?

"The Clerk: Jury number two, sir.

"The Court: All right. That is all right. I see it. All right. Motion in this case has been filed, and I have read it, and the motion for continuance is overruled. Calling for trial at this time—

"Mr. Walters: We except.

"The Court: —the case of the United States against Willie Wilson and Morris Griffin. All of the jurors that were selected for the trial of this case this morning may be excused until three thirty this afternoon. You will not be eligible to sit again on the trial of that case. Now, is there any juror that heard any of the testimony that was given on the trial of that case this morning?

"(Two jurors stood)

"The Court: You are also disqualified.

"Mr. Walters: May we get these names, Judge?

---

2. As a matter of fact, they accepted three of the women on the jury that convicted them.

"The Court: All right. This is Juror Billis, and state your name for the record, please, ma'm.

"Juror Smith: Mrs. Hugh Smith—

"The Court: Mrs. Hugh Smith.

"Juror Smith: —Langdale.

"The Court: Mrs. Hugh Smith, all right. Now, call two other jurors and put them in the box.

"The Clerk: O. G. Hinkle and Aaron Aronov, take the box, please.

"The Court: Now, call the next sixteen jurors, call their names. Answer if your name is called, please.

"The Clerk: Hudson O. Brock.

"Juror Brock: Here.

"The Clerk: McMillan Lane.

"Juror Lane: Here.

"The Clerk: P. H. Polk.

"Juror Polk: Here.

"The Clerk: Charley J. Cole.

"Juror Cole: Here.

"The Clerk: D. Carl Gay.

"Juror Gay: Here.

"The Clerk: Roy Bowen.

"Juror Bowen: Here.

"The Clerk: Will Patton.

"Juror Patton: Here.

"The Clerk: John S. Hodgson.

"Juror Hodgson: Here.

"The Clerk: Bryan B. Marsh.

"Juror Marsh: Here.

"The Clerk: Oscar A. Pindle.

"Juror Pindle: Here.

"The Clerk: J. M. Stoudemire.

"Juror Stoudemire: Here.

"The Clerk: Guy Perdue.

"Juror Perdue: Here.

"The Clerk: Mrs. Olive Andrews.

"Juror Andrews: Here.

"The Clerk: Lynn M. Moore.

"Juror Moore: Here.

"The Clerk: Alma M. Glover.

"Juror Glover: Here.

"The Clerk: James B. Ewing.

"Juror Ewing: Here.

"The Court: All right. Any of those jurors whose names were just called and is there either of you in the box that heard any of the testimony in the trial this morning? That is, the case of the United States—

"Juror Bowen: I heard the first two witnesses.

"The Court: All right, sir; what is your name, please?

"Juror Bowen: Roy Bowen.

"The Court: All right, Mr. Bowen, you may be excused until three thirty this afternoon. Call the next juror.

"The Clerk: Joe R. Pickens.

"Juror Pickens: Here.

"The Court: All right, Mr. Pickens, did you hear any of the testimony in the case this morning?

"Juror Pickens: No, sir.

"The Court: All right, sir. Now, subject to your motion, gentlemen, I know that it is subject to your motion—

"Mr. Walters: I beg your pardon, Judge?

"The Court: Subject to your motion, are you ready for trial?

"Mr. Walters: Judge, I would like to ask the jurors some questions.

"The Court: All right. I am going to —I am going to question them, myself.

"Mr. Walters: Could I give you the questions which I have written, Judge?

"The Court: Yes, sir; I will consider them.

"(Messrs. Walters and Varner went to the bench and conferred with the court)

"The Court: Now, if you jurors will, you in the box and you whose names were called, give me your attention. The case of the United States against Willie Wilson and Morris Griffin has been called for trial. The attorneys representing the defendants in this case, Mr. Walden of Montgomery, and Mr. Walters of Troy; representing the Government, Mr. Davis, Mr. Varner, and Mr. Daughtry. Are you related to or acquainted with, or are you related to or acquainted with either of the lawyers in the case. Now, there are several of you that are I know, so that the record might reflect that you did make response, stand and state your name and which lawyers you are acquainted with or related to. All right.

"Juror Parker: Mrs. Thomas Parker; I am acquainted with Mr. Varner.

"The Court: All right, is that business or social?

"Juror Parker: Social.

"The Court: All right.

"Juror Ward: I am acquainted with Mr. Davis; John Ward; I am acquainted with Mr. Davis.

"The Court: All right, Mr. Ward. All right?

"Juror Bell: I am acquainted with Mr. Davis.

"The Court: That is Mrs. Bell; Mrs. Bell, gentlemen. Mr. Aronov?

"Juror Aronov: I am Aaron Aronov, and acquainted with Mr. Varner, Mr. Davis, and Mr. Walden.

"Juror Stone: Harry Stone, acquainted with Mr. Davis.

"The Court: All right, Juror Stone. All right, sir?

"Juror Hodgson: John Hodgson; I am acquainted with Mr. Davis and Mr. Varner.

"Juror Marsh: Marsh; I am acquainted with Mr. Davis and Mr. Varner.

"The Court: That is Mr. Marsh.

"Juror Lane: McMillan Lane; I am acquainted with Varner.

"The Court: All right, Mr. Lane.

"Juror Polk: P. H. Polk; I am acquainted with Mr. Varner.

"The Court: All right.

"Juror Andrews: Olive Andrews; I am acquainted with Mr. Davis.

"The Court: All right. Is any of that acquaintanceship other than social or business, let it be known; if it goes beyond that. Do either of you that made response to this question feel as if that acquaintanceship would prejudice you or embarrass you to such an extent that you could not render a fair and a true verdict in this case? I believe I have inquired of you whether or not you were in the room and heard any of the evidence in the case this morning that was tried. Have either of you had any discussion with anyone concerning the evidence that was taken on the trial of that case this morning? I don't know whether it's applicable or not, but I am going to ask it; if either of you were challenged in that case this morning, that is, excused by the Government or by the defendants, would that prejudice you if you were selected as a juror on the trial of this case so that you could not render a fair verdict in the case according to the law and the evidence? If it would, or if you feel as if it would, let it be known at this time. All right.

"(Messrs. Walters and Davis went to the bench and conferred with the court)

"The Court: All right. Did either of you jurors hear the argument or any part of the argument in the case this morning? Have either of you jurors heard of any part of the proceeding that may have taken place in the case of the United States against Willie Wilson and Morris Griffin this morning?

"Juror Hodgson: Judge, I don't know whether it is exactly in answer to your question, but I did talk to C. T. Fitzpatrick, and he told me that you declared a mistrial.

"The Court: All right, did he tell you the reason, Mr. Hodgson?

"Juror Hodgson: No, sir.

"The Court: He did not. All right. Do you feel as if the fact that I declared a mistrial in the case would prejudice you in the event you are selected as a juror on the trial of this case?

"Juror Hodgson: No, sir.

"The Court: Let me tell all you jurors that this is a completely new proceeding, separate and apart from that proceeding this morning.

"Juror Ward: Judge, your honor, I was also made aware of the fact that you had declared a mistrial in the case, but I did not discuss why or the man did not.

"The Court: You heard that I had declared—

"Juror Ward: I heard you had declared a mistrial.

"The Court: Did not hear the reason?

"Juror Ward: Well, no, sir; simply was that it was a statement made or—

"The Court: During the course of the argument?

"Juror Ward: Yes, sir; that you ruled—

"The Court: Mr. Ward, do you feel as if that would prejudice you and make it impossible for you to render a fair and a true verdict in this case?

"Juror Ward: No, sir; I do not.

"The Court: Mr. Aronov?

"Juror Aronov: Your honor, I also heard that the case was declared a mistrial this morning, and had no additional information other than the fact that it was stated that the case had been mistried.

"The Court: All right, sir. Mr. Aronov, do you feel as if that would prejudice you?

"Juror Aronov: No, sir; I do not.

"The Court: All right.

"Juror Deal: I also heard the same thing.

"The Court: Did you hear anything in addition to that?

"Juror Deal: No, sir.

"The Court: State your name for the record.

"Juror Deal: L. R.—Louie R. Deal.

"The Court: Mr. Deal, do you feel as if you were selected on the case you could render a true and fair verdict?

"Juror Deal: Yes, sir.

"The Court: All right.

"Juror Parker: I heard after I sat in the box that it was declared a mistrial, but no other additional information at all.

"The Court: This is Mrs. Parker. Do you feel as if you could render a fair verdict in the case if you were selected, Mrs. Parker?

"Juror Parker: Yes, sir.

"The Court: All right.

"Juror Walthall: I also heard it was a mistrial as I came up to the Post Office, but I didn't hear anything about the argument.

"The Court: Do you feel as if you could render a fair verdict for the defendants and the Government in the case if you are selected as a juror?

"Juror Walthall: Yes, sir.

"The Court: State your name for the record.

"Juror Walthall: Mrs. George Walthall.

"The Court: All right, Mrs. Walthall. Just a minute, there is one other.

"Juror Barnes: Your honor, I also heard that it was a mistrial, however, it won't prejudice me in any way.

"The Court: State your name for the record.

"Juror Barnes: Robert C. Barnes.

"The Court: All right, there is one other juror back here.

"Juror Pindle: I heard that it was a mistrial, but no further information.

"The Court: All right, do you feel as if you could render a fair verdict in the case if you were selected as a juror?

"Juror Pindle: Yes, sir.

"The Court: State your name for the record.

"Juror Pindle: Oscar A. Pindle.

"The Court: All right.

"Juror Glover: I heard it was a mistrial when I reported back this afternoon, but no further information was given; Alma M. Glover, Montgomery.

"The Court: Mrs. Glover, do you feel as if you were selected in this case you could render a fair verdict?

"Juror Glover: Yes, sir.

"The Court: All right.

"Juror Moore: L. M. Moore; I heard it was a mistrial on the statement of one of the attorneys, but it has no effect on my decision one way or the other.

"The Court: All right, sir.

"Juror Ewing: I also heard the same statement, your honor, and I do not think it would prejudice me in any way.

"The Court: State your name. You have to state your name, the reporter didn't get it please, sir.

"Juror Ewing: J. B. Ewing, Alexander City, Alabama.

"Juror Perdue: Guy Perdue, Luverne; I heard you had a mistrial, but didn't hear any further information; don't think it would affect me, your honor.

"The Court: All right.

"Juror Oakley: L. M. Oakley, Jr.; I heard also it was a mistrial, but I don't think that would have any effect on my decision.

"The Court: All right.

"Juror Channell: I also heard it was a mistrial, Judge.

"The Court: State your name.

"Juror Channell: Juddy L. Channell.

"The Court: Do you feel as if you could render a fair and true verdict in the case?

"Juror Channell: Yes, sir.

"Juror Andrews: Olive Andrews; I heard the information that it was a mistrial.

"The Court: Do you feel as if you were selected as a juror on the case you could render a true verdict?

"Juror Andrews: Yes, sir.

"The Court: You say you do?

"Juror Andrews: No, sir.

"The Court: You do not?

"Juror Andrews: I understood the question would it affect me; no, it wouldn't.

"The Court: Would not affect you; all right. Any others? All right.

"Juror Lane: McMillan Lane; I heard it on the way back up here.

"The Court: You feel as if, were you selected, Mr. Lane, you could render a fair verdict in the case?

"Juror Lane: Yes, sir.

"The Court: All right, gentlemen. Statements of the jurors are offered in support of the motion for continuance?

"Mr. Walters: Correct.

"Mr. Walden: Your honor, may I say one word in support of that motion, that it's evident that practically every juror that we would have to strike from has heard about the mistrial. Now, we in making our motion are not attempting to impugn the honesty or integrity of any of these jurors; we do not think that anyone would be consciously influenced by this previous proceedings, but perhaps unconsciously to the prejudice of the defendants that they would be, and therefore I would like to have that included in our grounds for a continuance, that just stated.

"The Court: The mistrial wasn't granted because of any misconduct on your part or Mr. Walters' part or the part of either of the defendants in the case; it was because of an error that was made, without any intention I think, on the part of one of the Government attorneys.

"Mr. Walden: Yes, sir.

"The Court: I don't see how it could prejudice your clients in the trial of the case.

"Mr. Walden: What I had reference to was the fact that each one had heard that there was a mistrial.

"The Court: How does that prejudice?

"Mr. Walden: Well, perhaps unconsciously they may be influenced into a decision one way or the other against our clients.

"The Court: Well, if it was in favor of your clients, it wouldn't prejudice?

"Mr. Walden: I wouldn't object.

"The Court: All right. What says the Government to the jury in the box? You want them identified, gentlemen?

"Mr. Varner: You want them identified—we don't, your honor, excuse me.

"The Court: All right, I will ask the jury to identify themselves if you wish it, gentlemen.

"Mr. Walden: Y'all satisfied with the jury?

"Mr. Varner: Yes, sir; we are satisfied with the jury in the box.

"The Court: All right. What says defendants?

"Mr. Walters: Excuse Juror Brown and Juror Stone.

"The Court: Those two jurors can stand aside. Call the next two.

"The Clerk: Hudson Brock, McMillan Lane; take the box please.

"The Court: What says the Government?

"Mr. Davis: Government satisfied.

"The Court: What says the defendant?

"Mr. Walden: Who was the other one?

"The Clerk: Hudson Brock.

"Mr. Walden: Brock.

"Mr. Walters: We excuse Juror Brock.

"The Clerk: P. H. Polk, take the box.

"The Court: What says the Government?

"Mr. Davis: Government will excuse P. H. Polk.

"The Court: Next juror.

"The Clerk: Charley J. Cole.

"The Court: What says the defendant?

"Mr. Walters: We will excuse Juror Cole.

"The Clerk: D. Carl Gay.

"The Court: What says the Government?

"Mr. Davis: Government satisfied.

"The Court: What says defendant?

"Mr. Walters: We will excuse Juror Gay.

"The Clerk: Will Patton.

"Mr. Davis: Satisfied.

"The Court: What says defendant?

"Mr. Walters: Defendants excuse Juror Patton.

"The Clerk: John S. Hodgson.

"The Court: Just a minute, Will Patton, you can have a seat in the court room, you have been excused.

"Juror Patton: Yes, sir.

"Mr. Davis: Government satisfied.

"Mr. Walters: Defendants are satisfied."

## Appendix "B"

ADMINISTRATIVE OFFICE OF THE
UNITED STATES COURTS
SUPREME COURT BUILDING
WASHINGTON 25, D. C.

DIRECTOR

September 16, 1957

WILLIAM L. ELLIS
ASSISTANT DIRECTOR

Bulletin No. 488

To: Judges, United States Courts of Appeals (57)

Judges, United States District Courts (165)

Clerks of United States District Courts (246)

United States Marshals (102)

United States Jury Commissioners

Laws With Reference to
Jury Service

The 85th Congress has passed three bills with reference to jury service which should be called to your attention.

1. Civil Rights Act of 1957, Public Law 85–315, approved September 9, 1957. Section 152 provides as follows:

"Sec. 152. Section 1861, title 28, of the United States Code is hereby amended to read as follows:

"§ 1861. Qualifications of Federal jurors

"Any citizen of the United States who has attained the age of twenty-one years and who has resided for a period of one year within the judicial district, is competent to serve as a grand or petit juror unless—

"(1) He has been convicted in a State or Federal court of record of a crime punishable by imprisonment for more than one year and his civil rights have not been restored by pardon or amnesty.

"(2) He is unable to read, write, speak, and understand the English language.

"(3) He is incapable, by reason of mental or physical infirmities to render efficient jury service."

2. Mileage and Subsistence Allowances for Grand and Petit Jurors. Public Law 85–299 [28 U.S.C. § 1871], approved September 7, 1957.

This increases the allowances of grand and petit jurors as follows:

Subsistence from $5 per day to $7 per day; and

Mileage from 7 cents per mile to 10 cents per mile.

3. Use of Certified Mail in Summoning Jurors, Public Law 85–259 [28 U.S.C. § 1867], approved September 2, 1957.

This provides that each person drawn for jury service may be served personally or by registered *or certified* mail. Certified mail now costs 30 cents plus postage, including return receipt while registered mail costs 60 cents plus postage, also including return receipt.

/s/ W. L. Ellis
Acting Director.

**456**

Appendix "C"

UNITED STATES DISTRICT JUDGE'S CHAMBERS

MIDDLE DISTRICT OF ALABAMA

POST OFFICE BOX 35

MONTGOMERY, ALABAMA

September 19, 1957

FRANK M. JOHNSON, JR.
    DISTRICT JUDGE

Mr. William O. Baldwin
First National Bank
Montgomery, Alabama

Dear Mr. Baldwin:

Since you have been appointed and are now serving as the Jury Commissioner in this district, I feel that I should call your attention to the fact that the Congress of the United States, by Public Law 85-315 on September 9, 1957, changed the law pertaining to the qualifications of federal jurors. The new law now reads as follows:

"Any citizen of the United States who has attained the age of twenty-one years and who has resided for a period of one year within the judicial district, is competent to serve as a grand or petit juror unless—

"(1) He has been convicted in a State or Federal court of record of a crime punishable by imprisonment for more than one year and his civil rights have not been restored by pardon or amnesty.

"(2) He is unable to read, write, speak, and understand the English language.

"(3) He is incapable, by reason of mental or physical infirmities to render efficient jury service."

You will notice that an individual, in order to be qualified as a federal juror, now does not have to meet the qualifications prescribed by the laws of the State of Alabama. This means that the names of qualified female citizens may be and should be placed in the jury box for this district.

I know from my previous discussions with you concerning the qualifications of jurors in this district that you have not, at any time, discriminated because of any citizen's race or color. However, it may be that you did pass over some citizens that may not have been then qualified according to the laws of the State of Alabama but now are qualified. If that is the case, you should, at the earliest possible time, review those instances.

I want you to know that since you and Mr. Dobson refiled this jury box, the jurors whose names have been drawn therefrom are of the highest caliber, and this reflects the time and effort that you spent in selecting these individuals. I appreciate very much your serving as a Jury Commissioner in this district.

Sincerely yours,

/s/ Frank M. Johnson, Jr.

Frank M. Johnson, Jr.

United States District Judge