Angel R. SANTANA, Plaintiff,
Appellant,

v.

The UNITED STATES of America,
Defendant, Appellee.

No. 76–1278.

United States Court of Appeals,
First Circuit.

Heard Feb. 15, 1977.

Decided June 14, 1977.

Van Oosterhout, Senior Circuit Judge, sitting by designation, dissented and filed an opinion.

Harry A. Ezratty, San Juan, P. R., for plaintiff, appellant.

Jose Antonio Fuste, San Juan, P. R., with whom David V. Hutchinson, Atty., States Department of Justice, Admiralty & Shipping Division, Washington, D. C., Julio Morales Sanchez, U. S. Atty. and Jimenez & Fuste, San Juan, P. R., were on brief, for defendant, appellee.

Before COFFIN, Chief Judge, VAN OOS-TERHOUT,* and INGRAHAM,** Senior Circuit Judges.

INGRAHAM, Senior Circuit Judge.

This suit for Jones Act [1] negligence and unseaworthiness was brought under the Public Vessels Act [2] for personal injuries suffered in a fall on a United States Navy tanker. The trial court was unpersuaded by plaintiff's testimony that he slipped on some greasy hoses blocking a passageway. Because we are "left with the definite and firm conviction that a mistake has been committed," *United States v. Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948), we reverse.

Angel R. Santana, an able-bodied seaman, shipped out on the U.S.N.S. Cossatot from Puerto Rico. The Cossatot, a T–2 tanker laden with aviation fuel, was bound for Naples, Italy. A leak in one of the tanks necessitated an extended stay in Naples for repairs. Acetylene torches and electric welders were brought aboard. Numerous hoses and cables required to operate the equipment were stretched across the ship. On the day of the accident plaintiff was painting on the main deck to starboard using "red lead" to prevent corrosion. When he finished his shift he went to stow the paint and brush in the bosun's locker located amidship. To do so he had to walk along a certain passageway across which the hoses and cables were laid. Normally, a catwalk spanning the oil pipes on the ship could also be used to gain access to the locker. However, fire hoses placed there during repairs blocked this route. There

were approximately twenty hoses and cables, each with a diameter of one-half to one inch, lying parallel across plaintiff's path. He testified that they covered an area of about four to six feet and were so placed that he was unable to step between them. He also testified that the hoses and cables, as well as the deck at that spot, were greasy. It was a foggy day and some condensation had formed on the deck and hoses. Plaintiff was wearing industrial work shoes with rubber soles. He had safely negotiated this route on prior occasions, but claimed that this was the first time he had been unable to place his feet directly on the deck. He slipped and fell and sustained back injuries.

The trial of this case, which was conducted with care, was nonetheless unusual in certain respects. Plaintiff's English was limited. An official Spanish interpreter participated. Plaintiff was the only witness to the accident. Because a precise account was crucial to the findings of fact and the result, difficulties in communication were magnified. On cross-examination defendant's counsel sought to clarify the incident:

Q. Assume that, I am assuming that for the purposes of this question, wasn't it possible for you to walk over the hoses, taking certain precautions, especially when you knew that the hoses were there?

A. I took the precautions that I could, but the only thing I could do was to walk over those hoses.

---

*Of the Eighth Circuit, sitting by designation.

**Of the Fifth Circuit, sitting by designation.

1. 46 U.S.C. § 688. The statute provides, in pertinent part:

Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in case of the death of any seaman as a result of any such personal injury the personal representative of such sea-

man may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable.

2. 46 U.S.C. § 781. The statute provides, in pertinent part:

A libel in personam in admiralty may be brought against the United States, or a petition impleading the United States, for damages caused by a public vessel of the United States . . . .

Mr. Ezratty (plaintiff counsel): Excuse me. I believe that the counsel would agree with me that one of the words was encima, which means . . .

Mr. Fuste (defense counsel): On. That is what he means.

The Court: Thank you.

Q. What precautions did you take to avoid falling in that area?

A. Well, I tried to jump, I tried to walk carefully on them, but I slipped casually, I slipped and I fell.

Mr. Fuste: Casually he said?

Interpreter: Por sa safidad.

Mr. Fuste: What would the translation be for that, por sa safidad?

Mr. Ezratty: I don't know.

The Court: Can we agree with the translation?

Mr. Fuste: Mr. Ezratty?

Mr. Ezratty: I am listening.

Mr. Fuste: It means it so happened that I fell, it is an accident thing.

Mr. Ezratty: I will accept that.

The Court: That is the answer the witness said?

Mr. Fuste: Basically.

A minor dispute had already occurred on direct examination:

Q. And would you tell us what happened to you on this day that you had your accident?

A. I was touching up where it was damaged . . .

Mr. Fuste: That is not the proper translation.

Mr. Ezratty: Get him to repeat it.

A. . . . I was touching up with red lead where they had welded.

The Court: Mr. Fuste?

Mr. Fuste: Let's clarify this for Your Honor and the record.

What he was doing, I suppose, was he was doing touch up work with this red lead paint, am I right?

Mr. Ezratty: That is correct.[3]

We do not mean by our summary of the trial to disparage the interpreter. These incidents simply illustrate that there are occasional difficulties in conveying meaning from one language to another, especially in a legal setting.

Although Santana was the only witness to the accident, the trial court ultimately disbelieved essential elements of his testimony. The court observed that plaintiff's testimony regarding previous injuries was questionable and that plaintiff had been impeached by defendant's witness, Dr. Charles Payne. In 1970 plaintiff had suffered a back injury while working on the Ponce, a ship owned by Sea-Land Services. Litigation also ensued from that accident. Dr. Payne examined Santana in late 1973 in connection with the Sea-Land litigation. According to Dr. Payne, he sought information about "accidents" suffered by Santana subsequent to the 1970 fall, and was told by Santana that there had not been any. It developed at trial that Santana had had numerous recurrences of back problems, stemming in part from his maritime activities. In 1972 plaintiff had lifted a heavy barrel on another ship and wrenched his back. There were a number of aches and pains recorded in Santana's medical history of which Dr. Payne claimed to have been uninformed or misinformed. However, it was established by plaintiff's counsel on cross-examination that not every misfortune is an "accident":

Q. Now, doctor, do you make a distinction in your mind between a recurrency and an accident?

A. Yes.

Q. What would an accident be?

A. How I fell or how I felt?

Q. How you felt. How were you feeling after your accident?

A. I was feeling okay.

Q. No—after your accident?

A. Oh, after my accident, I felt very bad. The pain in my back was coming down by left leg.

---

3. Yet another outward manifestation of the communications gap can be found in the direct examination of the plaintiff:

Q. Now, Mr. Santana, when you were in Italy, immediately after your accident, tell us, please, how you felt?

A. What?

Q. Tell us, please, how you felt?

A. An accident, I would say, was a happenstance occurrence.

Q. And what would a happenstance occurrence be, doctor?

A. An unexpected event, a boding of ill of some sort.

Q. It would involve a trauma, and recurrence, what could that be?

A. Recurrency could be a repetition of symptoms pre-existing.

Q. Okay. Now, doctor, if you care to look at your notes, in 1967, would you tell us how you determined that this was an accident? You can look at your notes, if you would like.

A. Well, he complained of back pain while working on a ship.

Q. Is that an accident?

A. No, that is probably a recurrence.

Q. Fine, we can rule that out as an accident?

A. No, under the circumstances, I said probably, I didn't say it wasn't.

Q. But you said it was an accident, you circled all of the accidents?

A. No, I circled everything that pertained to the back.

Q. Excuse me, sir, you called each and every one of these things accidents?

A. Well, if I did, let me strike that and let me indicate that what is circled up there is a complaint of back pain.

* * * * * *

Q. And it is possible that these are not accidents, but recurrences, correct?

A. No. If you lift a heavy barrel and you get a sudden onset of severe back pain, that is an accident. It is also a pre-existing conditions wound, it is like opening an old wound.

Q. It could be both?

A. Yes.

Q. And in the mind of a seaman, might that not be an accident, unless he has been in a fall or been struck by a heavy barrel?

A. A recurrence?

Q. Maybe, he would think of something other than an accident, isn't that so?

A. I think that is so.

The 1972 barrel incident was also covered in cross-examination of the plaintiff:

Q. I am going to read the entry. Patient reported to this facility on September 17th, 1972, with recurrence of left back and flank pain sustained while lifting a heavy barrel aboard his ship on August 7, 1972.

A. Yes.

Q. Why didn't you inform, at that time, of that intermediate accident?

Mr. Ezratty: Your Honor, I am going to object. It is not an accident.

The Court: I am not sure about that. The objection is denied.

A. That was not an accident.

Q. Why didn't you report at the deposition the fact that you had this recurrence?

A. Because that was not an accident.

Q. So the reason why you didn't report this condition was that you understood that it was not an accident?

A. Correct.

Plaintiff's credibility, or lack thereof, was the foundation of the trial court's decision. The court chose to doubt plaintiff's testimony, giving as its reason the uncertainty about plaintiff's truthfulness in reporting injuries. It also concluded that the cause of plaintiff's fall was not the allegedly greasy hoses, but the slippery conditions created by the humid atmosphere and accumulated condensation.

A number of salient factors bear upon our review of the findings. Plaintiff did not speak English and his testimony was filtered through an interpreter. Defense impeachment did not directly refute his story about the accident and was itself marred by the possibility of misunderstanding between doctor and patient.[4] Finally, the plaintiff was the only witness to the accident.

---

**4.** The record does not indicate whether Dr. Payne spoke Spanish. Nor does it indicate how the doctor communicated with Santana during the visits.

The factual context of this case is somewhat unusual. The law in this area is also different from garden variety tort law. Admiralty suits for personal injury are conducted with extraordinary solicitousness for the seaman. Directed verdicts for defendants in such cases are rare. G. Gilmore and C. Black, Law of Admiralty, (2nd ed. 1975) at 378.[5] This is largely because "[t]he burden on the plaintiff to prove proximate cause in actions based on the Jones Act and general maritime law is very light." *Landry v. Two R. Drilling Co.*, 511 F.2d 138, 142, *rehearing denied* 517 F.2d 675 (5th Cir. 1975). The plaintiff need show only that defendant's negligence or the dangerous condition was a cause of plaintiff's injuries. *Bennett v. Perini Corp.*, 510 F.2d 114, 117 (1st Cir. 1975). Under the Jones Act, liability exists if the negligence contributed, even in the slightest, to plaintiff's injury. *Rogers v. Missouri-Pacific R. R. Co.*, 352 U.S. 500, 77 S.Ct. 459, 1 L.Ed.2d 515 (1957); 46 U.S.C. § 688. *See also Spinks v. Chevron Oil Co.*, 507 F.2d 216 (5th Cir. 1975). Thus we are confronted with a peculiar set of facts and with substantive law heavily slanted in plaintiff's favor.

However, appellate review is limited by the "clearly erroneous" standard of F.R.Civ.P. 52(a). *McAllister v. United States*, 348 U.S. 19, 20, 75 S.Ct. 6, 99 L.Ed. 20 (1954); *Barbe v. Drummond*, 507 F.2d 794, 796 (1st Cir. 1974). A cold record is rarely so revealing as the face of a witness. The trial judge, with his front row seat, has an opportunity to watch the witness for traits that indicate untruthfulness or a guilty conscience. Normally he is not compelled to accept a plaintiff's testimony even if uncontradicted. The plaintiff has the burden of proof and the trial judge may find that the testimony does not carry that burden. *Mueller v. C. I. R.*, 338 F.2d 1015 (1st Cir. 1964); *Ramos v. Matson Navigation Co.*, 316 F.2d 128 (9th Cir. 1963).

But there are times when the record itself indicates that the trial judge, despite his superior vantage point, has erred in his assessment of the testimony. We think this is one of those rare cases. Plaintiff's story was not altered on cross-examination. He insisted that the hoses and cables and deck were greasy, and candidly admitted that the weather was foggy. The language barrier may have eroded his persuasiveness, but it did not wash away his story. Plaintiff's deposition, taken eight months prior to trial, amply warned the defense of the factual allegations. However, no witnesses were called to refute the crucial testimony that the hoses and cables were greasy. One might expect that plaintiff's supervisor would have inspected the scene after receiving a report of injury. If so, no testimony was offered. Plaintiff's version was not contradicted and was not directly impeached.

What strengthens our conclusion that error was committed is the fact that the district court, despite its summary rejection of the plaintiff's testimony regarding grease, appears ultimately to have rested its decision on the ground that, even if grease was present, the greasy condition was not the proximate cause of the accident. If the court was in error in its view of proximate cause, which it deemed the more important ground for its decision, we would feel that, under the circumstances we have noted, a conclusory statement of disbelief of plaintiff's uncontradicted and unimpeached testimony is vulnerable.

Assuming that there was grease on the hoses and cables when plaintiff slipped, we would find it almost impossible to conclude that the moisture and not the grease caused the accident. More likely, the two elements combined to create treacherous footing. If so, plaintiff, would be entitled to recover. *Nicroli v. Den Norske, etc.*, 332 F.2d 651 (2nd Cir. 1964); *Vastano v. Partownership Brovigtank*, 158 F.Supp. 447 (E.D.N.Y.1957). However, the trial court stated that it did not feel the greasy condition "was *the* proximate cause of plaintiff's fall." (Emphasis added.) The apparent belief of the trial court that only one proximate cause could exist was error. *Rogers*

---

**5.** *But see Perry v. Morgan Guaranty Trust Co.*, 528 F.2d 1378 (5th Cir. 1976); *Peymann v. Perini Corp.*, 507 F.2d 1318 (1st Cir. 1974), *cert. denied*, 421 U.S. 914, 95 S.Ct. 1572, 43 L.Ed.2d 780 (1975); *Rice v. Atlantic Gulf & Pacific Co.*, 484 F.2d 1318 (2nd Cir. 1973).

v. Missouri-Pacific R. R. Co., supra; Bennett v. Perini Corp., supra. Similarly, contributory negligence by the plaintiff might diminish his recovery, but it could not automatically defeat it. Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953).

The case is REVERSED and REMANDED for a new trial on all issues.

REVERSED and REMANDED.

VAN OOSTERHOUT, Senior Circuit Judge, dissenting.

I respectfully dissent. This case was tried to the court without a jury. Rule 52(a), Federal Rules of Civil Procedure, in pertinent part provides:

> "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

The validity of plaintiff's claim depends largely on his own testimony. The trial court determined plaintiff's testimony lacked credibility. I would affirm the judgment upon the basis of Judge Grant's unreported memorandum opinion.