**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

RONALD HAMPTON WOOD,
Plaintiff-Appellee,

v.                                                                                          No. 99-1282

UNITED STATES OF AMERICA,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of North Carolina, at Wilmington.
W. Earl Britt, Senior District Judge.
(CA-97-46-7-BR)

Submitted: September 30, 1999

Decided: November 22, 1999

Before WIDENER and MICHAEL, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

David W. Ogden, Acting Assistant Attorney General, Janice McKen-
zie Cole, United States Attorney, Peter F. Frost, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant.
Daniel L. Brawley, Ryal W. Tayloe, WARD & SMITH, P.A., Wil-
mington, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

The United States of America appeals from the district court's adverse finding of negligence in this maritime personal injury case, and the court's $400,000 award to Ronald Hampton Wood for injuries sustained while performing maintenance work on board the M/V CAPE LAMBERT, a cargo vessel owned by the United States Maritime Administration. Wood, a member of the maintenance crew, filed suit under the Jones Act, 46 U.S.C.A. § 688 (West Supp. 1999) (Appendix), under a negligence theory that included an unseaworthiness claim under general maritime law.[1] The district court held a bench trial and found that the Maintenance Chief Mate, Wood's supervisor, was negligent, and that Wood was contributorily negligent. We affirm.

The facts leading up to the injury are not in dispute. Wood and his supervisor, the Maintenance Chief Mate, met at 8:00 a.m. the morning of the accident to discuss the days' duties. One of those duties was to move a coil of wire from one deck to another. Wood was an experienced seaman and bosun, well acquainted with the handling of lines and wires. Wood indicated to the Maintenance Chief Mate that he needed assistance to perform this task. The Maintenance Chief Mate instructed Wood to complete his morning rounds, and told him he would join Wood and assist him in moving the wire coil after completing his rounds. Wood completed his rounds in fifteen minutes and waited for the Maintenance Chief Mate. When the Maintenance Chief Mate did not arrive, Wood attempted to contact him via two-way radio several times,[2] and, when he could not contact him, proceeded to perform the work himself.[3] The Maintenance Chief Mate, delayed

_____

[1] The district court did not find that the vessel was unseaworthy.
[2] Both men carried two-way radios to communicate with each other while each was in a different area of the ship.
[3] Wood unsuccessfully continued his attempts to contact his supervisor at various points in the process of moving the wire coil.

by other necessary work outside the scope of his usual morning rounds, did not contact Wood to advise him of the delay or provide him with other instructions. Wood injured his back when the end of the wire rope became caught and Wood attempted to free the line while it was under tension. When the Maintenance Chief Mate arrived on the scene at approximately 9:45 a.m., he assisted Wood in moving equipment and then told Wood he was ready to help with the wire coil. Wood informed his supervisor that he had already completed the job.

The district court found that the Maintenance Chief Mate deviated from his morning rounds without notifying Wood of his actions, leaving Wood to perform the required task of moving the wire coil alone. The district court found negligent the failure of the Maintenance Chief Mate to provide proper supervision and assistance to Wood, specifically, his failure to advise Wood that he was delayed and either arrange for other assistance for Wood or assign him to other tasks which he could safely perform alone pending his arrival. The district court further determined that Wood was sixty percent negligent in moving the wire coil himself and in attempting to free the end of a line under tension.[4] The total damage award was $1,000,000.

On appeal, the United States challenges the district court's assignment of liability to the United States, claiming that while the district court's factual findings were accurate, it applied erroneous legal standards. The United States takes issue with the district court's finding of a duty on the part of Wood's supervisor to predict when Wood would take independent dangerous action contrary to his supervisor's orders. The United States also claims that Wood independently and mistakenly created a dangerous condition, that he independently chose to correct his mistake in an unsafe way, and was therefore solely responsible for his injuries.

To prevail on a Jones Act negligence claim against his employer, a seaman must establish (1) personal injury in the course of his employment; (2) negligence by his employer or an officer, agent, or employee of his employer; and (3) causation to the extent that his

_____

[4] The admiralty doctrine of comparative negligence applies. See Jacob v. New York, 315 U.S. 752, 755 (1942).

3

employer's negligence was the cause "in whole or in part" of his injury. See Gautreaux v. Scurlock Marine, Inc. , 107 F.3d 331, 335 (5th Cir. 1997) (en banc). Liability exists where employer negligence played even the slightest role in producing the injury for which damages are sought. See Ferguson v. Moore-McCormack Lines, Inc., 352 U.S. 521, 523 (1957) (quoting Rogers v. Missouri Pac. R.R. Co., 352 U.S. 500, 506 (1957)); Santana v. United States , 572 F.2d 331, 335 (1st Cir. 1977).

Drawing on common law principles to guide in the requirement of proving negligence, it is well understood that negligence is "conduct which falls below the standard established by law for the protection of others against unreasonable risk of harm." Restatement (Second) of Torts § 282 (1965); see also W. Page Keeton, et al., Prosser and Keeton on Torts § 31, at 170 (5th ed. 1984) (Lawyer's Edition). The risk included in this definition is one that is reasonably foreseeable. See Gallick v. Baltimore & Ohio R.R. Co., 372 U.S. 108, 117 (1963); Brown v. CSX Transp. Inc., 18 F.3d 245, 249 (4th Cir. 1994). In short, under common law principles of negligence, a plaintiff must establish the breach of a duty to protect against foreseeable risks of harm.

We review a district court's factual findings, including findings of negligence, for clear error. See Bonds v. Mortensen & Lange, 717 F.2d 123, 125 (4th Cir. 1983). Questions of law are reviewed de novo. See Neathery v. M/V Overseas Marilyn, 700 F.2d 140, 143 n.2 (4th Cir. 1983).

The United States first claims that the district court improperly assigned fault to it based on a duty of omniscience. It contends that the district court erroneously required that the Maintenance Chief Mate read Wood's mind and conclude that he would disobey his order and perform the task alone.

The Maintenance Chief Mate recognized that moving the wire coil required more than one person. In response to Wood's stated request, his supervisor indicated he would assist him, ordering Wood to perform the task after his morning rounds and stating that he would assist Wood after finishing his morning rounds. Contrary to the United States' assertion, the district court did not find that there was an order by the supervisor for Wood to wait for him before moving the wire

4

coil. Rather, the district court found that there was an order to move the coil and an indication of assistance by the supervisor.

The district court essentially concluded that the Maintenance Chief Mate should have foreseen that Wood might be tempted to perform the ordered task alone, since no assistance or alternative orders were provided to him. The district court specifically found that the supervisor's duty to supervise and assist encompassed a duty to inform when the previously agreed-upon plans had changed, rather than leaving Wood to perform the task alone. On this record, we find no error in the district court's conclusion that the Maintenance Chief Mate breached his duty owed to Wood.[5]

The second issue on appeal is that Wood's action in moving the coil by himself was the sole proximate or superceding cause of his injury. We find no error in the district court's determination that Wood's injury was caused, in part, by the Maintenance Chief Mate's failure to assist him with the job or make other arrangements on his behalf, given that the supervisor ordered him to perform the job, knew that Wood needed assistance to do so, and deviated from his morning rounds and agreed-upon plan to assist Wood without notifying Wood of his actions. See Ferguson, 352 U.S. at 523; Santana, 572 F.2d at 335.[6]

Accordingly, we affirm the judgment of the district court. We dispense with oral argument because the facts and legal contentions are

_____

[5] While the United States makes much of the fact that the Maintenance Chief Mate ultimately showed up to assist Wood with the job, claiming that Wood was impatient, it ignores the unchallenged facts that: (1) the supervisor's arrival was delayed; (2) he failed either to notify Wood, or to make himself accessible should Wood need to contact him with difficulties he encountered; and (3) there was a standing order to move the wire coil after Wood finished his morning rounds.

[6] We find that the United States' reliance on Exxon Co., U.S.A. v. Softec, Inc., 517 U.S. 830 (1996), is misplaced because Wood's action in undertaking to move the wire coil himself was foreseeable when the Maintenance Chief Mate deviated from the agreed-upon plan to assist Wood with performing the ordered task without providing him with further instruction.

5

adequately presented in the materials before the Court and argument would not aid the decisional process.

AFFIRMED