**George C. STAFFORD, Plaintiff, Appellee,**

v.

**PERINI CORPORATION, Defendant, Appellant.**

**No. 71–1221.**

United States Court of Appeals, First Circuit.

Heard Dec. 7, 1972.

Decided March 20, 1973.

---

James C. Gahan, Jr., Boston, Mass., for defendant, appellant.

David B. Kaplan, Boston, Mass., with whom Robert S. Wolfe, Boston, Mass., was on brief, for plaintiff, appellee.

Before COFFIN, Chief Judge, Mc-ENTEE and CAMPBELL, Circuit Judges.

McENTEE, Circuit Judge.

Plaintiff, George C. Stafford, brought this action under the Jones Act, 46 U.S. C. § 688, for negligence and under the general maritime law for unseaworthiness to recover for personal injuries sustained while working on a barge owned by his employer, Perini Corporation.[1] Following a jury trial, judgment was entered in plaintiff's favor in the amount of $64,140. Arguing that the evidence was insufficient to support the jury verdict, both as to liability and damages, and that the verdict was excessive in amount, Perini appeals from the denial of its motions for a directed verdict and a new trial. For the reasons stated below, we affirm.

Construing the evidence most favorably to the plaintiff, the facts are as follows. At the time of the accident, Stafford was employed as a dockbuilder by Perini Corporation, which was then engaged in the construction of the Newport Bridge in Rhode Island. One of Stafford's principal duties in this capacity was to build and repair certain "forms," which were used for the pouring of concrete in erecting the piers of the bridge. This work was generally done on the deck of a barge owned by Perini (Scow 101), which was located about two miles offshore in Narragansett Bay. The barge also served as a storage area for various materials and carried a large crane which was used for the purpose of lifting the forms back and forth from the deck to the piers. In addition to building and repairing the forms, Stafford did various construction work on the piers themselves and also assisted in moving the barge from one site to another by handling its mooring and towing lines.

The crane on board Scow 101 was supported by 16 x 16 timbers which ran across the surface of the barge in such a manner as to leave only a narrow unobstructed walkway along the edge of the deck. On May 15, 1969, Stafford and a co-worker were ordered to carry a four hundred pound channel iron across the barge, although it was the usual practice

---

1. A third count for maintenance and cure was decided by the district court in favor of the defendant. No appeal was taken from this decision.

to assign three or four men to this task. While carrying the channel iron across the obstructed area, Stafford slipped on some dunnage and injured his back.

A myelogram taken shortly after this incident revealed that Stafford had sustained a herniated cervical disc between his fifth and sixth cervical vertebrates. As a result of this injury, he was required to undergo surgery and did not resume work of any kind until December 14, 1969, at which time he started a new job as an automobile mechanic performing light servicing work only. Stafford was cleared by his physician for a return to his former employment on March 1, 1970, but continued to complain of headaches, difficulty in swallowing and a weakness in his arms. He testified that as a result of these symptoms, he was unable to perform heavy labor of any kind.

Prior to his employment with Perini in 1966, Stafford had worked mostly as a mechanic and a truck driver, earning less than $7,000 a year. While working as a dockbuilder, however, his average annual earnings exceeded $12,000. During a period in 1968 when work on the Newport Bridge had been temporarily suspended, plaintiff was variously employed as a mechanic, a construction worker, and a millwright. His weekly earnings in these latter two capacities were $180 and $190 respectively. Following his return to work after the accident, Stafford earned $120 per week as a light mechanic.

On the issue of damages, the district court instructed the jury that it could award plaintiff a sum which would reasonably compensate him for his past and future pain and suffering and loss of earning capacity. Under these instructions, the jury returned a $60,000 verdict in plaintiff's favor.

■■ Appellant's basic argument on the issue of liability is that plaintiff did not qualify as a "member of a crew of any vessel" and was therefore not entitled to recover under the Jones Act or the general maritime law. *See* Swanson v. Marra Brothers, Inc., 328 U.S. 1, 66 S.Ct. 869 90 L.Ed. 1045 (1946). In support of this contention, appellant argues that plaintiff failed to meet the test for crew-member status laid down in Offshore Company v. Robison, 266 F.2d 769, 779 (5th Cir. 1959) since the evidence was insufficient to establish (1) that he performed a substantial part of his work on board Scow 101 and (2) that the duties which he performed contributed to the function of the vessel or the accomplishment of its mission. We cannot agree with this assessment of the evidence. Contrary to appellant's assertion that plaintiff's work was done almost exclusively on the piers, the record clearly indicates that a significant part of his job was to build and renovate the forms used in connection with the piers' construction. According to appellant's own witness, this work was done on the deck of Scow 101. There was also testimony that on the day of the accident, Stafford spent at least four hours on board the barge. In light of this evidence, we cannot say, as a matter of law, that plaintiff did not perform a substantial part of his work on Scow 101. Moreover, since one of the primary functions of the vessel was apparently to provide a work area for the construction of the forms, it is clear that Stafford's duties directly related to the performance of its mission. The question as to plaintiff's crew-member status, therefore, was for the jury. *Compare* Grimes v. Raymond Concrete Pile Co., 356 U.S. 252, 78 S.Ct. 687, 2 L.Ed. 737 (1958); Butler v. Whiteman, 356 U.S. 271, 78 S. Ct. 734, 2 L.Ed.2d 754 (1958); Biggs v. Norfolk Dredging Co., 360 F.2d 360 (4th Cir. 1966).

■ Appellant also objects to the district court's instructions to the jury on this issue, arguing that insufficient emphasis was placed on the "substantial work" requirement. The court quite clearly instructed the jury, however, that plaintiff must have had more than an irregular connection with a vessel in order to be found a member of a crew, and that this issue could be framed in

terms of whether he performed a substantial part of his work on the barge. While this instruction was perhaps something less than ideal from appellant's viewpoint, we think it was an adequate statement of the law as set forth in Offshore Company v. Robison, *supra*.

██ Appellant next argues that the evidence did not warrant a finding that it was negligent as alleged under the Jones Act claim, and that the court committed prejudicial error in its instructions to the jury on that issue. We find these arguments to be without merit. First, Perini made no objection to the court's instructions on this aspect of the case and we therefore decline to consider its contentions on appeal.[2] Secondly, there was ample evidence to support a finding of negligence on appellant's part. Expert testimony established that working conditions on board Scow 101 were unsafe on the day of the accident. Moreover, plaintiff testified that the unsafe condition had existed on the deck of the barge for approximately three months before the accident, and that it was contrary to custom and practice to require only two men to carry a four hundred pound channel iron. Under these circumstances, it certainly was not error to submit the negligence claim to the jury.

██ Appellant's remaining contentions relate to the issue of damages. First, Perini argues that the evidence was insufficient to establish a causal connection between the accident and plaintiff's alleged disability at the time of the trial. When plaintiff's expert medical witness was questioned as to whether Stafford's symptoms were reasonable in view of his original injury and the surgery which he subsequently underwent, he replied "Yes. He could have a disability related to this." Appellant argues, however, that since this testimony only expressed an opinion as to the *possibility* of a causal relationship

between the accident and the alleged disability, the jury was improperly permitted to include future loss of earning capacity and pain and suffering in its calculation of damages. We agree with the district court that "the combined testimony of the plaintiff and his orthopedic surgeon could fairly have been construed . . . as supporting" such an award. In Sentilles v. Inter-Caribbean Corp., 361 U.S. 107, 80 S.Ct. 173, 4 L.Ed.2d 142 (1959), the Court considered a similar challenge to the sufficiency of the medical evidence to support a finding of causality. In that case, the plaintiff claimed that his pre-existing tubercular condition had been aggravated as a result of the accident in question. While none of the three medical witnesses was willing to definitely attribute the aggravation of plaintiff's illness to the accident, they each indicated that it was a possible or probable cause. In upholding the jury's verdict the Court stated that:

"The jury's power to draw the inference that the aggravation of petitioner's tubercular condition, evident so shortly after the accident, was in fact caused by that accident, was not impaired by the failure of any medical witness to testify that it was in fact the cause . . . . The matter does not turn on the use of a particular form of words by the physicians in giving their testimony. The members of the jury, not the medical witnesses, were sworn to make a legal determination of the question of causation. They were entitled to take all circumstances, including the medical testimony, into consideration" (footnote omitted). *Id.* at 109, 80 S.Ct. at 175.

*See also* Brett v. J. M. Carras, Inc., 203 F.2d 451 (3d Cir. 1953). The medical evidence in this case, when taken together with plaintiff's testimony concerning his symptoms and the time of their onset, was sufficient to warrant the jury

---

2. For the same reason, we need not consider appellant's argument that the district court improperly instructed the jury on the issue of proximate cause in relation to the unseaworthiness claim.

in finding a causal connection between the accident and plaintiff's disability.

Appellant also argues that the district court erred in failing to grant its motion for a new trial on the grounds that the jury's verdict was excessive. According to appellant, the size of the jury's verdict was in large part attributable to its use of a temporary period of abnormally high wages as a standard for determining plaintiff's future loss of earning capacity. Perini argues that prior to his employment as a dockbuilder in 1966, plaintiff had worked mostly as a mechanic and truck driver earning less than $7,000 a year; that plaintiff's job with Perini would have ended about one month after the accident; and that no evidence was introduced as to the availability of similar jobs in the Newport area.

A motion for a new trial on the grounds of inadequate or excessive damages is addressed to the discretion of the trial court, and its decision may be reversed only for an abuse of that discretion. *See* Boston & Maine Railroad v. Talbert, 360 F.2d 286 (1st Cir. 1966); New York, N. H. & H. R. Co. v. Zermani, 200 F.2d 240 (1st Cir. 1952), cert. denied, 345 U.S. 917, 73 S.Ct. 729, 97 L.Ed. 1351 (1953). The evidence at trial showed that plaintiff had demonstrated an earning capacity of over $12,000 a year as a dockbuilder prior to the accident, and that subsequent to his injury he was unable to perform heavy labor of any kind. Plaintiff also testified that there were dockbuilding jobs available in the Boston area after his return to work in December of 1969, and that several of his former co-workers on the Perini job were commuting from Newport to Boston on a daily basis to work on these projects. Moreover, there was evidence that during part of 1968, plaintiff worked both as a millwright and construction worker, earning between $180 and $190 per week on these jobs, both of which required heavy physical labor. At the time of the trial, plaintiff was employed as a light mechanic earning $120 per week, and had a

working life expectancy of 15.2 years. There was also considerable testimony as to the pain and suffering which he underwent as a result of his accident and the subsequent surgery. Considering all of the above circumstances, we do not believe that the jury's verdict was excessive, and hold that the trial court was within its discretion in denying appellant's motion for a new trial.

Finally, appellant contends that the evidence was insufficient to warrant the court's instruction as to the aggravation of a pre-existing medical condition. In view of our holding above that the evidence adequately established a causal relationship between plaintiff's accident and his subsequent disability, we find that this instruction was not prejudicial.

Affirmed.