**PUBLISH**

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 96-5278
_____

D. C. Docket No. 95-7147-CV-WJZ

INBESA AMERICA, INC., a Texas Corporation,

Plaintiff-Appellee,

versus

M/V ANGLIA, a 1977 313-foot general
cargo ship, Lloyds Reg. No. 7601724,
her engines, tackle, cargo,
appurtenances, etc., in rem,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

**(February 2, 1998)**

Before ANDERSON and BIRCH, Circuit Judges, and WOODS[*], Senior
District Judge.

_____

[*]Honorable Henry Woods, Senior U.S. District Judge for the
Eastern District of Arkansas, sitting by designation.

BIRCH, Circuit Judge:

In this appeal, we determine whether a contract for various shipping-related services comes within the federal admiralty jurisdiction. In granting summary judgment for appellee Inbesa America, Inc. ("Inbesa"), the district court held that a contract between Inbesa and the charterer of <u>in rem</u> appellant M/V *Anglia* was wholly maritime, thereby bringing all disputes arising under the contract within the federal admiralty jurisdiction. The *Anglia*, however, contends that the contract is not subject to admiralty jurisdiction because the contract covers a variety of non-maritime services. We REVERSE and REMAND for further proceedings.

## I. BACKGROUND

Inbesa operates a terminal shipping facility in the Port of Houston, Texas. As part of its business, Inbesa provides shippers with both docking and cargo-handling services. Although Inbesa's

own employees perform most of Inbesa's shoreside services, Inbesa subcontracts all stevedoring to outside companies.

In April 1994, Inbesa entered a "Stevedoring and Terminal Services Contract" ("the contract") with Genesis Container Line ("Genesis"). Under the contract, Inbesa agreed to perform a variety of services for Genesis's liner service, including cargo handling, dockage, and stevedoring. Inbesa then subcontracted its stevedoring responsibilities to Gulf Stream Maritime, Inc. ("Gulf Stream").

In November 1994, the claimant/owner of the *Anglia*, Reederei MS Anglia GmBH & Co. KG ("Reederei"), and Genesis entered into a time charter allowing Genesis to use the *Anglia* for its liner service. Thereafter, the *Anglia* received terminal services from Inbesa from July through November 1995 under the existing Inbesa-Genesis contract. Under the contract, Inbesa billed Genesis for six itemized categories of services with regard to the *Anglia*: $ 6,708.56 for dockage; $ 115,688 for stevedoring; $ 6,708.56 for unloading of

break bulk (i.e., un-containerized) cargo from trucks; $ 14,807.50 for stuffing and stripping of break bulk cargo into and out of containers; $ 5,265.68 for securing cargo within containers; and $ 28,062.36 for moving cargo through Inbesa's wharf.

When Genesis failed to pay its bills, Inbesa filed a verified complaint in rem against the *Anglia* to foreclose on purported maritime liens for its services. The *Anglia*, however, argued that the district court lacked admiralty jurisdiction because the contract involved significant non-maritime services.[1] On the parties' cross-motions for summary judgment, the district court awarded final judgment to Inbesa against the *Anglia* for $ 177,389.62 plus prejudgment interest. The *Anglia* now appeals.

## II. DISCUSSION

Before assessing the validity of Inbesa's asserted lien, we must first establish whether we have admiralty jurisdiction over the

---

[1]To avoid arrest of the *Anglia*, Reederei stipulated with Inbesa to substitute security for Inbesa's asserted lien.

4

contract from which the lien is purported to arise. See, e.g., Ambassador Factors v. RMS, 105 F.3d 1397, 1398-99 (11th Cir. 1997). In order for a contract to fall within the federal admiralty jurisdiction, it must be wholly maritime in nature, or its non-maritime elements must be either insignificant or separable without prejudice to either party. See E.S. Binnings, Inc. v. M/V Saudi Riyadh, 815 F.2d 660, 665 (11th Cir. 1987); 14 Charles Alan Wright et al., Federal Practice and Procedure § 3675 (Suppl. 1997) (collecting cases). To qualify as maritime, moreover, the elements of a contract must "pertain directly to and be necessary for commerce or navigation upon navigable waters. . . . The test we apply in deciding whether the subject matter of a contract is necessary to the operation, navigation, or management of a ship is a test of reasonableness, not of absolute necessity." Ambassador Factors, 105 F.3d at 1399 (quoting Nehring v. Steamship M/V Point Vail, 901 F.2d 1044, 1048 (11th Cir. 1990) (internal quotation omitted).[2]

---

[2]In this sense, the federal admiralty jurisdiction is co-terminus with the right of providers of maritime services to

5

Applying this standard, the *Anglia* argues that a significant portion of the services provided by Inbesa under the contract were non-"necessary," while Inbesa maintains that its contract services were wholly maritime. We review the district court's jurisdictional analysis de novo. <u>See</u> <u>Sea Vessel, Inc. v. Reyes</u>, 23 F.3d 345, 347 (11th Cir. 1994).

As stated previously, Inbesa asserts a maritime lien on the *Anglia* for six itemized categories of services: (1) dockage, (2) stevedoring, (3) unloading, (4) stuffing and stripping, (5) securing, and (6) wharfage. Of these claimed services, two, dockage and stevedoring, are clearly maritime. <u>See</u> Steven F. Friedell, 1

---

maritime liens. <u>See</u> <u>Bradford Marine, Inc. v. M/V Sea Falcon</u>, 64 F.3d 585, 589 (11th Cir. 1995) ("The lien and the proceeding *in rem* are . . . correlative--where one exists, the other can be taken, and not otherwise." (quoting <u>The Rock Island Bridge</u>, 73 U.S. (6 Wall.) 213, 215, 18 L. Ed. 753 (1867))). Under the Maritime and Commercial Instruments and Liens Act, "a person providing <u>necessaries</u> to a vessel on the order of the owner or a person authorized by the owner . . . (1) has a maritime lien on the vessel; [and] (2) may bring a civil action in rem to enforce the lien . . . ." 46 U.S.C. § 31342(a)(1) & (2) (emphasis added). The statutory definition of "necessaries," however, is non-exclusive and, therefore, not helpful in this particular case. <u>See</u> 46 U.S.C. § 31301(4) ("'necessaries' includes repairs, supplies, towage, and the use of a dry dock or marine railway"); <u>Bradford Marine</u>, 64 F.3d at 589 (statutory definition non-exclusive).

Benedict on Admiralty § 213, at 14-21 (7th ed. 1997) ("During the furnishing, supplying, loading, unloading and repairing of a vessel, it is necessary that she should lie at wharf, dock or pier . . . . The pecuniary charge to which vessels are liable for such use of a dock or wharf is called . . . dockage and is a subject of admiralty jurisdiction . . . ." (footnotes omitted)) (collecting cases); id. § 215, at 14-25 ("To enable the vessel safely to transport her cargo, it is of the first importance that the cargo be well stowed . . . . The business of stowing ships and of breaking out cargo at the port of delivery has fallen into the hands of . . . stevedores. Their services are maritime." (internal footnote omitted)) (collecting cases).

The remaining categories of services provided by Inbesa under the contract, however, are non-maritime cargo-handling. Despite Inbesa's protestations, "it has long been the rule that contracts involving cargo are maritime only to the extent the cargo is on a ship or being loaded on or off a ship." Luvi Trucking, Inc. v. Sea-Land Serv., Inc., 650 F.2d 371, 373 (1st Cir. 1981) (citing The Moses

7

Taylor, 71 U.S. (4 Wall.) 411, 18 L. Ed. 397 (1866)).[3]  Inbesa's

stripping, stuffing, securing, and unloading of cargo into and out of

containers and trucks was not directly related to the loading or

unloading of a maritime vessel.  Cf. Bermuda Express, N.V. v. M/V

Litsa, 872 F.2d 554, 563-64 (3rd Cir. 1989) (movement of cargo

chassis along pier "not directly related to loading or unloading the

vessel"); South Carolina State Ports Auth. v. M/V Tyson Lykes, 837

F. Supp. 1357, 1365 (D.S.C. 1993), aff'd, 67 F.3d 59 (4th Cir. 1995)

(cargo container services not maritime); Green Light Transp., Inc. v.

Ocean Express Lines, Inc., No. 93-1686-CIV, (S.D. Fla. 1994)

(positioning truck under stevedore's crane not maritime).  But see

---

[3]Inbesa's citations to Pittson Stevedoring Corp. v. Dellaventura, 544 F.2d 35, 53 (2d Cir. 1976), aff'd Northeast Marine Terminal Co., Inc. v. Caputo, 432 U.S. 249, 97 S. Ct. 2348, 53 L. Ed. 2d 320 (1977), are inapposite.  In Pittson, the Second Circuit "liberally" interpreted the "remedial" Longshoreman and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901 et seq, to cover longshoremen handling cargo along a pier, thereby providing parity between longshoremen off-loading cargo containers and longshoremen stripping such containers.  See id. at 51-53.  In contrast, Inbesa seeks in the instant case to assert a lien under the Maritime and Commercial Instruments and Liens Act, 46 U.S.C. § 31342.  Maritime liens are "governed by the principle 'stricti juris and will not be extended by construction, analogy or inference.'"  Bradford Marine, 64 F.3d at 589 (quoting Piedmont & George's Creek Coal Co. V. Seabord Fisheries Co., 254 U.S. 1, 12, 41 S. Ct. 1, 4, 65 L. Ed. 97 (1920)).

8

<u>Ceres Marine Terminals, Inc. v. M/V Harmen Oldendorff</u>, 913 F. Supp. 919, 927 (D. Md. 1995) (holding container stuffing and stripping to be maritime).[4] Although such services by Inbesa were no doubt important for Genesis's business, they were not "necessary" for the *Anglia*'s operation. Indeed, all of Inbesa's cargo-handling services took place on land without regard to whether the *Anglia* was in port; Inbesa could have unloaded, stuffed, and secured cargo from trucks into containers before the *Anglia* arrived, and then stripped cargo from containers into warehouses or onto trucks after the *Anglia* departed. Although we recognize that circumstances may sometimes arise in which movement of cargo a short distance away from a ship may be necessary to make room for additional off-loading, Inbesa has made no such claim of stevedoring necessity in this case. The fact that it was convenient, as a logistical

---

[4]In addition to finding <u>Ceres</u> unpersuasive, we are uncertain whether the case remains good law within the Fourth Circuit. After the district court in <u>Ceres</u> issued its opinion, the Fourth Circuit affirmed <u>Tyson Lykes</u>, which had found shoreside, cargo container services to be non-maritime. See <u>Tyson Lykes</u>, 837 F. Supp. at 1365, <u>aff'd</u>, 67 F.3d 59. The Fourth Circuit, however, did not discuss the <u>Tyson Lykes</u> district court's conclusion that such services were not maritime.

9

matter, for Genesis to have Inbesa fill and empty its cargo containers at Inbesa's port facilities is not enough to make Inbesa's shoreside, cargo-handling services maritime. Cf. Luvi Trucking, 650 F.2d at 373 ("Whether a contract action falls within admiralty jurisdiction depends upon the subject matter of the contract rather than the place where the contract . . . is to be performed"). We see no reason to blur the line between stevedoring and shoreside cargo-handling that has long been a useful guide for the district courts in determining the scope of their admiralty jurisdiction.

For similar reasons, Inbesa's "wharfage" services, as idiosyncratically defined by the contract, are also non-maritime. Normally, the term "wharfage" is used synonymously with "dockage." See 1 Benedict § 213, at 14-21. As such, "wharfage" is a maritime service. See id. Inbesa's "wharfage" fees, however, reflect charges for the movement of Genesis's cargo through Inbesa's wharf, not dockage. See R2-33 at 16 (Geiger Depo.) ("Wharfage is a charge assessed on every ton of cargo that goes through a wharf."). In fact,

Inbesa not only charged Genesis separately for "dockage," as the district court noted below, see R3-96 at 5-6, but also listed "wharfage" under the contract's heading for terminal cargo-handling services, see R2-33 Exh. 1 at 2. Inbesa cannot bring shoreside cargo-handling services within the admiralty jurisdiction simply by re-labelling them as "wharfage."

In sum, we conclude that a significant portion of Inbesa's obligations under the contract are non-maritime. Even so, it may be possible for a federal court to exercise admiralty jurisdiction over the maritime dockage and stevedoring parts of the contract if they are separable without prejudice to either party. See Binnings, 815 F.2d at 665. Unfortunately, neither Inbesa nor the *Anglia* has addressed the separability or prejudice issues in their briefs before this court, and the district court did not have reason, given its ruling that the contract was wholly maritime, to examine such issues in its order granting summary judgment. Although the itemized nature of Inbesa's invoices and claims suggests to us that the maritime and

11

non-maritime elements of the contract may be separable, we believe that the prudent course is to remand the case to the district court so that it may examine the separability and prejudice issues as a court of the first instance.[5] On remand, the district court should determine, first, whether Inbesa's maritime claims under the contract are capable of separate adjudication and, second, whether separate adjudication of Inbesa's claims concerning dockage and stevedoring would be prejudicial to Inbesa's or the *Anglia*'s claims or defenses regarding the non-maritime contract services.

## III. Conclusion

A significant portion of the contract at issue concerns non-maritime shoreside services. Therefore, we conclude that the district court erred in exercising admiralty jurisdiction over Inbesa's claim for a lien against the *Anglia* to cover all of Inbesa's contract

---

[5]As we are remanding the case to the district court, we decline to reach at this time the additional issues raised by the parties.

services to the vessel. Accordingly, we REVERSE and REMAND the case to the district court for a determination of whether the remaining contract services are separable without prejudice as required for the district court to exercise admiralty jurisdiction. Should the district court conclude that admiralty jurisdiction does lie with regard to Inbesa's claims for maritime dockage and stevedoring services, it may proceed to determine whether summary judgment is again appropriate.